IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In Re: ) | |
| ) | |
| OSC 1 LIQUIDATING CORPORATION f/k/a ) | Chapter 11 |
| ORCHARD SUPPLY HARDWARE STORES ) | |
| COPORATION, *et al.*, ) | Case No. 13-11565 (CSS) |
| ) | |
| Debtors ) | (Jointly Administered) |
| ) | |
| ) | |
| ALAMO GROUP, LLC ) | |
| AND KIRIN ALAMO, LLC, ) | |
| ) | Adv. Case No. 14-50103 (CSS) |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | |
| A&G REALTY PARTNERS, LLC, ) | |
| MICHAEL JERBICH, AND DOES 1-25 ) | |
| ) | |
| Defendants. ) | |
| ) | |

**OPINION**[1]

| | |
|---|---|
| BALLARD SPAHR LLP | ASHBY & GEDDES, P.A. |
| Tobey M. Daluz | William P. Bowden |
| Jessica L. Case | Gregory A. Taylor |
| 919 North Market Street, 11th Floor | 500 Delaware Avenue, 8th Floor |
| Wilmington, Delaware 19801 | Wilmington, Delaware 19899 |
| -and- | -and- |
| Brent Weisenberg | BURKHALTER KESSLER CLEMENT & |
| 425 Park Avenue | GEORGE LLP |
| New York, New York 10022 | Daniel J. Kessler |
| | Eric J. Hardeman |
| | 2020 Main Street, Suite 600 |

---

[1] "The court is not required to state findings or conclusions when ruling on a motion under Rule 12...." Fed. R. Bankr.P. 7052(a)(3). Accordingly, the Court herein makes no findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.

|  |  |
|---|---|
|  | Irvine, California 92614 |
| Counsel for Defendants | Counsel for Plaintiffs |
| A&G Realty Partners, LLC | Kirin Alamo, LLC |
| and Michael Jerbich | and Alamo Group, LLC |

Date: May 12, 2015

Sontchi, J. *[signature]*

## INTRODUCTION

Before the Court is Defendants' 12(b)(6) Motion to Dismiss for failure to state a claim for fraudulent misrepresentation. Because Plaintiffs fail to allege materiality, a necessary element of a Delaware common law fraud claim, the Court will grant Defendants' Motion.

## JURISDICTION

This Court has jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2) and the Court has the judicial power to enter a final order. Moreover, the Court retained jurisdiction over this matter in Article X ("Retention of Jurisdiction") of the above-captioned Debtors' Amended Chapter 11 Plan[2], and in paragraph 50 of the Plan Confirmation Order.[3] Finally, the Court retained jurisdiction over this matter in the Order approving an Amended Designation Rights Agreement: "The Court shall retain jurisdiction over disputes pertaining to this Order or the Agreement."[4]

---

[2] Case No. 13-11565, D.I. 785.
[3] *Id.* at D.I. 836.
[4] Adv. Case No. 14-50103, D.I. 13, Ex. H, p. 9 ¶ 16. All further references made will be to the docket of this adversary proceeding, unless otherwise stated.

Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

## STATEMENT OF FACTS

This is an adversary proceeding alleging fraudulent misrepresentation. Plaintiffs are Alamo Group, LLC and Kirin Alamo, LLC (together, "Plaintiffs"). Each is organized under the laws of the State of California, with its principle place of business in Alamo, California. Defendants are A&G Realty Partners, LLC and Michael Jerbich (together, "Defendants" or "Defendant Brokers").[5] A&G is a New York limited liability company, with its principal place of business in Melville, New York. Mr. Jerbich presently resides in Chicago, Illinois and is listed as an A&G principal on the company's website. Plaintiffs' claim relates to lease designation rights marketed by Debtors Orchard Supply Hardware Stores Corporation, *et al.* ("OSH" or "Debtors"). OSH was a retailer of home improvement and gardening products, with several stores throughout California. In June 2013, OSH and its affiliates filed for relief under chapter 11 of the Bankruptcy Code.

Subsequently, Debtors sold substantially all operating assets to an affiliate of Lowe's Home Improvement Stores. The remaining property of the bankruptcy estate included nine of Debtors' unexpired commercial leases (the "Remaining Leases"). Defendant A&G, through Defendant Jerbich, acted as Debtors' real estate broker. A&G was to assist Debtors in selling rights to the Remaining Leases, receiving a fee based on gross proceeds from any sale.

---

[5] Additionally, there are twenty-five unidentified defendants, whose names are unknown to Plaintiffs.

3

The most valuable of the Remaining Leases was a property in Merced, California (the "Merced Lease"). The Merced Lease was particularly attractive because it was a "ground lease," which allows a landlord to assume all of a tenant's improvements to a property once that lease expires. Primarily interested in the Merced Lease, Plaintiffs negotiated with Defendant Brokers to purchase Debtors' rights to the Remaining Leases. Plaintiffs' resulting deal with Debtors was a *Designation Rights Agreement for the Purchase of Designation Rights Relating to Leasehold Interests of Orchard Supply Hardware Stores Corporation, Orchard Supply Hardware LLC, and OSH Properties by Alamo Group* (the "Designation Rights Agreement").

The essential terms of the Designation Rights Agreement were that in exchange for $315,000 from Plaintiffs, Debtors would transfer, to Plaintiffs, the right to accept or reject assumption of any of the Remaining Leases for a specified period of time. The Bankruptcy Court scheduled a hearing regarding the proposed sale. One business day before the sale hearing, Defendant Brokers informed Plaintiffs of a competing bid from two individuals, Tom and Joe Gong. The form of the bid was a binding letter of intent offering $1.1 million to purchase rights to only the Merced Lease.

In response, Plaintiffs requested a copy of the Gongs' letter. Plaintiffs allege that Defendant Brokers refused to provide a copy unless Plaintiffs agreed to sign a nondisclosure agreement. The nondisclosure agreement allegedly prevented Plaintiffs from contacting the Gongs prior to the sale hearing. Accepting the nondisclosure agreement, Plaintiffs reviewed the letter of intent. Plaintiffs' Complaint states, "the LOI, which on its face, appeared to be legitimate, and which coupled with the Defendant

4

Brokers' representations, led Plaintiffs to believe that the Gongs had done sufficient due diligence on the property, that the Gongs' deal with Debtors would work…"[6]

Facing the competing offer, Plaintiffs increased their bid to $1.2 million for rights to all of the Remaining Leases. Debtors accepted the new price, and the Designation Rights Agreement was amended accordingly. On October 21, 2013, the Court approved a sale based on the terms of the Amended Designation Rights Agreement.

Plaintiffs now allege that the Gongs' competing bid was a sham transaction. According to Plaintiffs, Defendant Brokers "engaged in a scheme to drive their commissions up by instructing the [Gongs] to submit an exponentially greater bid…"[7] Plaintiffs allege that they contacted the Gongs after the sale had gone through, and found that the Gongs had done little due diligence regarding the Merced Lease. The proposed deal with the Gongs was not feasible, Plaintiffs claim, "since the Gongs would be unable to convert the Merced Lease property for use with their own business."[8] Plaintiffs allege that the Gongs submitted the bid entirely at the instruction of Defendant Brokers.

Plaintiffs further allege that Defendant Brokers intentionally misrepresented certain details about the Gongs' counteroffer. Purportedly, Defendants said that the letter of intent was unsolicited and that Defendants did not have any previous contact with the Gongs. These statements were made directly in response to Plaintiffs'

---

[6] D.I. 1 ¶ 24.
[7] *Id.* at ¶ 19.
[8] *Id.* at ¶ 28.

questions. Plaintiffs, however, concede that the terms of the Designation Rights Agreement did not prohibit another buyer from outbidding Plaintiffs.

Plaintiffs state that they relied on Defendants' alleged misrepresentations in increasing their bid. Specifically, Plaintiffs would have not made the higher offer if they had known of Defendants' earlier communications with the Gongs. Plaintiffs instead would "have let the proposed $1.1 deal with the Gongs fall though, and [revisited] the original $315,000 offer with Debtors, which Debtors would have accepted."[9] Plaintiffs state that, at all relevant times, each Defendant acted as the agent or employee of the other Defendants and did all things alleged within the scope and course of such agency or employment. Further, Plaintiffs state that each Defendant authorized and ratified the actions of the other Defendants.

On March 26, 2014, Plaintiffs filed this adversary Complaint for fraudulent misrepresentation. On May 19, 2014, Defendants filed a Motion to Dismiss Plaintiffs' Complaint under Federal Rule of Civil Procedure 12(b)(6). Defendants offer several supporting theories, including that Plaintiffs fail to state a claim for common law fraud under Delaware law. The Court agrees that Plaintiffs fail to plead the necessary elements of a Delaware fraud claim, and therefore narrows its ruling to this particular issue.

---

[9] *Id.* at ¶ 29.

**LEGAL DISCUSSION**

    **A. Motion to Dismiss Standard**

A motion under Rule 12(b)(6)[10] serves to test the sufficiency of the factual allegations in the plaintiff's complaint.[11] "Standards of pleading have been in the forefront of jurisprudence in recent years."[12] With the Supreme Court's recent decisions in *Bell Atlantic Corp. v. Twombly*[13] and *Ashcroft v. Iqbal*,[14] "pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss."[15]

In *Iqbal*, the Supreme Court makes clear that the *Twombly* "facial plausibility" pleading requirement applies to all civil suits in the federal courts.[16] "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient to survive a motion to dismiss.[17] Rather, "all civil complaints must now

---

[10] Federal Rules of Civil Procedure 8(a) and 12(b)(6) are made applicable to this adversary proceeding pursuant to Federal Rules of Bankruptcy Procedure 7008 and 7012, respectively.
[11] *Kost v. Kozakiewicz,* 1 F.3d 176, 183 (3d Cir.1993) ("The pleader is required to set forth sufficient information to outline the elements of his claim or to permit inferences to be drawn that these elements exist." (citations omitted)).
[12] *Fowler v. UPMC Shadyside,* 578 F.3d 203, 209 (3d Cir.2009).
[13] 550 U.S. 544 (2007).
[14] 556 U.S. 662 (2009).
[15] *Fowler,* 578 F.3d at 210.
[16] *See Fowler,* 578 F.3d at 210.
[17] *Iqbal,* 556 U.S. at 678. *See also Sands v. McCormick,* 502 F.3d 263, 268 (3d Cir.2007) (citations omitted); *Bartow v. Cambridge Springs SCI,* 285 Fed.Appx. 862, 863 (3d Cir.2008) ("While facts must be accepted as alleged, 'this does not automatically extend to bald assertions, subjective characterizations, or legal conclusions.' "); *General Motors Corp. v. New A.C. Chevrolet, Inc.,* 263 F.3d 296, 333 (3d Cir.2001) ("Liberal construction has its limits, for the pleading must at least set forth sufficient information for the court to determine whether some recognized legal theory exists on which relief could be accorded the pleader. Conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss. While facts must be accepted as alleged, this does not automatically extend to bald assertions, subjective characterizations, or legal conclusions." (citations omitted)).

set out sufficient factual matter to show that the claim is facially plausible."[18] A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[19] Determining, whether a complaint is "facially plausible" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.[20] But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but not shown-that the pleader is entitled to relief."[21]

After *Iqbal*, the Third Circuit has instructed this Court to "conduct a two-part analysis. First the factual and legal elements of a claim should be separated. The [court] must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions."[22] The court "must then determine whether the facts alleged in the

---

[18] *Fowler,* 578 F.3d at 210 (internal quotations omitted). *See also Iqbal,* 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."); *Buckley v. Merrill Lynch & Co.*(*In re DVI, Inc.*), 2008 WL 4239120, 2008 Bankr.LEXIS 2338 (Bankr.D.Del. Sept. 16, 2008) ("Rule 8(a) requires a showing rather than a blanket assertion of an entitlement to relief. We caution that without some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only fair notice, but also the grounds on which the claim rests." (citations omitted)).
[19] *Iqbal,* 556 U.S. at 678.
[20] *Id.* at 681 ("It is the conclusory nature of [plaintiff's] allegations, rather than their extravagantly fanciful nature, that disentitles them to the presumption of truth.").
[21] Id. at 679.
[22] *Fowler,* 578 F.3d at 210–11. *See also Twombly,* 550 U.S. at 555, 127 S.Ct. 1955 (holding that a court *must* take the complaint's allegations as true, no matter how incredulous the court may be); *Iqbal,* 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.... When there are well-plead factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."); *Winer Family Trust v. Queen,* 503 F.3d 319, 327 (3d Cir.2007); *Carino v. Stefan,* 376 F.3d 156, 159 (3d Cir.2004). The Court may also consider documents attached as exhibits to the Complaint and any documents incorporated into the Complaint by reference. *In re Fruehauf Trailer Corp.*, 250 B.R. 168, 183 (Bankr.D.Del.2000) (citing *PBGC v. White,* 998 F.2d 1192, 1196 (3d Cir.1993)). "[I]f the allegations of [the] complaint are contradicted by documents made part thereof, the document controls and the Court need not accept as true allegations of the complaint." *Sierra Invs., LLC v. SHC, Inc.* (*In re SHC, Inc.*), 329 B.R. 438,

complaint are sufficient to show that the plaintiff has a plausible claim for relief."[23] The Third Circuit has further instructed that "[s]ome claims will demand relatively more factual detail to satisfy this standard, while others require less."[24]

**B. Choice of Law**

As a threshold matter, the Court must decide whether to apply the substantive laws of Delaware or California. Urging the Court to apply Delaware law to determine Plaintiffs' claim, Defendants point to Section 10.15 of the Amended Designation Rights Agreement: "This Agreement shall be construed, interpreted and the rights of the parties determined in accordance with the laws of the State of Delaware without regard to conflicts of laws principles thereof…"[25] Plaintiffs counter that in cases alleging fraud, courts must apply the laws of the state with the "the most significant relationship to the [alleged wrongdoing] and the parties."[26] Plaintiffs argue that California has the most significant relationship to Plaintiffs' fraud claim, and California law should govern. The Court disagrees with Plaintiffs' conclusion and will apply Delaware law.

---

442 (Bankr.D.Del.2005).*See also Sunquest Info. Sys., Inc. v. Dean Witter Reynolds, Inc.*, 40 F.Supp.2d 644, 649 (W.D.Pa.1999) ("In the event of a factual discrepancy between the pleadings and the attached exhibit, the exhibit controls." (citations omitted)).

[23] *Fowler,* 578 F.3d at 211 (internal quotations omitted) ("[A] complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." (citations omitted)). "The plaintiff must put some 'meat on the bones' by presenting sufficient factual allegations to explain the basis for its claim." *Buckley v. Merrill Lynch & Co., Inc.* (*In re DVI, Inc.*), 2008 WL 4239120, at *4, 2008 Bankr.LEXIS 2338, at *13 (Bankr.D.Del. Sept. 16, 2008).

[24] *In re Ins. Brokerage Antitrust Litig.,* 618 F.3d 300 (3d Cir.2010). *See also Arista Records LLC v. Doe,* 604 F.3d 110, 120–21 (2d Cir.2010) (stating that *Twombly* and *Iqbal* require factual amplification where needed to render a claim plausible, not pleadings of specific evidence or extra facts beyond what is needed to make a claim plausible).

[25] D.I. 13, Ex. F, p. 19.

[26] *Id.* at 8 (quoting *Gloucester Holding Corp. v. U.S. Tape & Sticky Prods., LLC*, 832 A.2d 116, 124 (Del. Ch. 2003).

9

Plaintiffs' claim for fraudulent misrepresentation is covered by the choice of law provision in the Amended Designation of Rights Agreement. To begin, a federal court must apply the choice of law principles of the state in which it sits.[27] And in Delaware, courts "are bound to respect the chosen law of contracting parties, so long as that law has a material relationship to the transaction."[28] Where the "material relationship" requirement is satisfied, Delaware courts will uphold a choice of law provision even as to the determination of fraud claims: "To hold that their choice is only effective as to the determination of contract claims, but not as to tort claims seeking to rescind the contract on grounds of misrepresentation, would create uncertainty of precisely the kind that the parties' choice of law provision sought to avoid."[29]

Since Section 10.15 of the Amended Designation of Rights Agreement specifies Delaware law, the only remaining question is whether Delaware has a "material relationship" to the transaction between Plaintiffs and Defendant Brokers. The subject of this lawsuit is the sale of the OSH entities' lease designation rights. Lead Debtor OSH was a Delaware corporation, and it was this Court, sitting in Delaware, which approved the sale to Plaintiffs. Because of the parties' earlier Agreement, and because the "material relationship" requirement is present, Delaware law will govern Plaintiffs' fraud claim.

---

[27] *In re Am. LaFrance, LLC*, 461 B.R. 267, 272 (Bankr. D. Del. 2011); *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235 (1981).
[28] *Abry Partners V, L.P. v. F & W Acquisition LLC*, 891 A.2d 1032, 1046 (Del. Ch. 2006).
[29] *Id.* at 1048.

**C. Fraudulent Misrepresentation Claim**

In Delaware, the elements of common law fraud are: (1) a false representation of material fact made by the defendant; (2) the defendant's knowledge or belief that the representation was false, or was made with reckless indifference to the truth; (3) an intent to induce the plaintiff to act or to refrain from acting; (4) the plaintiff's action or inaction taken in justifiable reliance upon the representation; and (5) damage to the plaintiff as a result of such reliance.[30] Here, the Court finds that Plaintiffs do not sufficiently plead that Defendant Brokers' alleged misrepresentations were material.

A false statement is material, as to satisfy the first element of a fraud claim, "if it 'has a natural tendency to influence, or was capable of influencing, the decision of' the decisionmaking body to which it was addressed."[31] For example, in *Kungys*, an applicant's misrepresentation of the date and place of his birth was not material to his positive citizenship determination.[32] The Supreme Court observed that the applicant's true date and place of birth would not have resulted in either an outright denial, or an investigation leading to a denial. The relevant inquiry was not whether, had it known the applicant made a false statement, the immigration agency would have decided differently. Rather, a court must consider the importance of the underlying facts. In that

---

[30] *See In re Opus E., L.L.C.*, 480 B.R. 561, 572 (Bankr. D. Del. 2012) (presenting substantially the same test, but omitting that the second element can be satisfied even where a defendant makes a representation with reckless indifference to the truth); *See also Harman v. Masoneilan Int'l, Inc.*, 442 A.2d 487, 499 (Del. 1982) ("The elements of 'actionable fraud' consist of a false representation of a material fact knowingly made with intent to be believed to one who, ignorant of its falsity, relies thereon and is thereby deceived"); *See also NACCO Indus., Inc. v. Applica Inc.*, 997 A.2d 1, 29 (Del. Ch. 2009) ("Equally important, the false statement must have been material").

[31] *Kungys v. United States*, 485 U.S. 759, 770 (1988) (citations omitted); *Montgomery v. Jacob Bros. Co.*, 35 Del. 112 (Del. Super. 1931) (a defendant's representations are material if they "relate to matters of substance and of such importance as to influence the action of the party to whom the representations are made").

[32] *Kungys*, 485 U.S. at 774.

case, there would have been no different outcome if the applicant had correctly stated his demographic information.[33]

Here, Defendant Brokers allegedly told Plaintiffs that the competing bid on the Merced Lease was "out of the blue" and unsolicited. In reality, allege Plaintiffs, Defendants had been negotiating a higher bid with the Gongs. Plaintiffs state Defendants sought this second bid to induce Plaintiffs to amend their initial offer. Had Plaintiffs known of the discussions between Defendants and the Gongs, Plaintiffs would have maintained their original position. However, Plaintiffs also acknowledge that the Designation Rights Agreement, which is the document containing Plaintiff's original offer, did not prohibit competing bids.

Taken as true, these facts do not support the inference that Defendants' misrepresentations were material to Plaintiffs' decision to place a second bid. As Plaintiffs state, the Designation Rights Agreement allowed Defendant Brokers to solicit other bids. From the seller's point of view, the very purpose of engaging a broker is to obtain the best possible sale price. That a counteroffer was solicited by a seller's agent is not the type of information that has the "natural tendency," in the words of *Kungys*, to scuttle negotiations. As stated there, a court must look at the importance of the underlying facts. Knowledge of concealment is not relevant. Here, whether the counteroffer was solicited or made "out of the blue," the outcome would have been the same: Plaintiffs would have had to make a higher offer to get the lease designation rights. Plaintiffs state that the Merced property was particularly valuable as a ground

---

[33] *Id.* at 775.

lease. There is no plausible claim that the history of the counteroffer was material to Plaintiffs' valuation.

Plaintiffs' remaining allegations, that the Gongs had done little due diligence and that the Merced property was incompatible with the Gongs' own business, do not relate to specific statements made by Defendants. According to the Complaint, Defendants presented Plaintiffs with a binding letter of intent, which, on its face, Plaintiffs agreed was legitimate. The letter of intent, in paragraph 7, specifically states that there is no applicable due diligence period. And nothing in the letter addresses the Gongs' planned use for the Merced property.

Nor is there a viable fraud by omission claim. To survive a motion to dismiss on this theory, a plaintiff must plausibly allege a deliberate concealment of material facts.[34] Plaintiffs allege that Defendants insisted on a nondisclosure agreement in order to prevent Plaintiffs from communicating with the Gongs and learning more about the counteroffer. However, Plaintiffs do not present any support for this incursion into Defendants' motive. Nondisclosure agreements are commonplace in bidding and sale proceedings. As a real estate development team, Plaintiffs were sophisticated parties who freely signed the nondisclosure agreement and independently reviewed the Gongs' letter of intent. Finally, there are no facts supporting the inference that Defendants themselves even knew about the alleged deficiencies in the Gongs' offer.

---

[34] Segovia v. Equities First Holdings, LLC, No. CIV.A.06C09-149-JRS, 2008 WL 2251218, at *21 (Del. Super. May 30, 2008) ("A deliberate concealment of material facts may also give rise to fraud.").

Because Plaintiffs do not sufficiently plead that Defendant Brokers' misrepresentations were material to the decision to place a second bid, or that there was a deliberate concealment of material information, there is no need to detail the remaining elements of a Delaware common law fraud claim. Plaintiffs' Complaint fails on these grounds.

## CONCLUSION

For the foregoing reasons, the Motion to Dismiss Plaintiffs' Complaint will be granted without prejudice. Plaintiffs will be given an opportunity to amend the Complaint within 30 days of the issuance of this opinion. The amended complaint should include specific allegations supporting Plaintiffs' fraud claim under Delaware law.

An order will be issued.